# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RAY BLANCHARD,

        Plaintiff,

v.                                         CIVIL ACTION NO. 5:15cv45
                                              (Judge Stamp)

UNITED STATES OF AMERICA,

        Defendant,

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on April 13, 2015, by filing a complaint pursuant to the Federal Tort Claim Act ("FTCA"). ECF No. 1. On April 15, 2015, the plaintiff's motion to proceed *in forma pauperis* was granted [ECF No. 7], and on May 11, 2015, the plaintiff paid his initial partial filing fee. ECF No. 11. Upon preliminary review, it appeared that the plaintiff might not have exhausted his administrative tort claim as required by 28 U.S.C. § 2675, or might have filed his FTCA beyond the statute of limitations. Accordingly, the defendant was instructed to file an answer limited to exhaustion and timeliness, and the Clerk of Court was directed to issue a 60 day summons for the United States Attorney's Office for the Northern District of West Virginia and the Attorney General for the United States. ECF No. 18.

On November 10, 2016, the defendant filed its response on the limited issues of exhaustion and timeliness and acknowledged that the plaintiff had indeed exhausted his remedies and was timely as required by 28 U.S.C. § 2401(b) and 28 U.S.C. § 2675.ECF

No. 20.[1] Therefore, on March 28, 2017, the defendant was ordered to file an answer addressing the merits of the complaint. ECF No. 21.

On June 6, 2017, the defendant filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support and exhibits. ECF Nos. 27 & 28. On June 12, 2017, an Order and Roseboro Notice was issued. ECF No. 32. On October 6, 2017, in apparent response, the plaintiff filed a "Motion Under Rule 56(A) for Summary Judgment." ECF No. 43.

## II. Material Facts[2]

The plaintiff is a former federal inmate, who was designated to FCC Hazelton from June 6, 2013, until February 20, 2014. ECF No. 27-2 at 8. On December 31, 2013, he was seen in the Special Housing Unit ("SHU") at 8:58 p.m. by a health service professional after he complained of an injury to his right knee. ECF No. 28-1 at 2. At that time, he reported that his right knee was swollen and hurt after jumping from his top bunk to the floor. Id. The plaintiff claimed that he was not able to tolerate weight on his right leg. Id. Medical assessment revealed mild to moderate swelling below the right knee. Id. The plaintiff complained of discomfort when attempting to move and was

---

[1]More specifically, the defendant noted that according to the plaintiff's complaint, he suffered the relevant injury on January 1, 2014, and on May 1, 2014, he filed his administrative tort claim with the BOP's Mid-Atlantic Regional Office. Moreover, although the BOP did not deny the claim until July 6, 2015, after the Plaintiff had filed his complaint, pursuant to statute, the claim was constructively denied on November 1, 2014, when six months had passed without the plaintiff having received a formal disposition as to the claim. 28 U.S.C. § 2675(a).

[2]Because the plaintiff, in his Motion Under Rule 56, has reiterated the statement of facts as set forth by the Defendant in its motion to dismiss or for summary judgment, the undersigned has assumed that the material facts as set forth herein are not in dispute.

unable to perform full range of motion during the assessment. Id. The plaintiff did, however, demonstrate good capillary refill and palpable pulses in his lower right extremity indicating that there was still good blood flow in his leg. Id. The plaintiff's knee was wrapped in a 6-inch Ace bandage; 800 mg. Ibuprofen was ordered for his pain management, to be filled at the earliest possible time; and an x-ray was ordered. Id. The physician assistant on duty was informed of the Plaintiff's status, and the Plaintiff was instructed to contact Health Services if he experienced any numbness or signs of decreased blood flow. Id.

On January 2, 2014, the Plaintiff was evaluated in Health Services. Id. He was placed in a splint and transferred to Monongalia General Hospital for assessment of a possible tibial or fibular fracture. ECF. No. 28-1 at 6-11. It was noted that he demonstrated good sensation and capillary refill following the splint application. When the plaintiff returned from the hospital that same date, his discharge paperwork indicated that he should have a follow up evaluation in a week. Id. The plaintiff's leg was then undressed and assessed with no significant findings. Id. His dressing was reapplied, and he was taken by wheelchair to his cell in the SHU. The plaintiff was permitted to keep the wheelchair in his possession. Id.

On January 8, 2014, Dr. Chris Vasilakis, an orthopedic surgeon, evaluated the plaintiff's right knee and determined that the knee had minor effusion and bruising. ECF No. 28-1 at 16. He was able to bend his knee 40 to 90 degrees, but the stability of the knee was unable to be assessed. Id. X-ray examination revealed a comminuted lateral

tibial plateau fracture in the right knee. Id. In his recommendation, Dr. Vasilakis advised that he would review the plaintiff's CT scan at Monongalia General Hospital to determine if surgery would be necessary or whether the plaintiff's case should be referred to West Virginia University Ortho trauma service for surgical fixation. Id. Dr. Vasilakis recommended that the plaintiff continue to ice his knee, avoid placing weight on it, keep it wrapped with the Ace bandage, and use Tylenol 3 for pain management. Id.

On January 9, 2014, the Plaintiff was provided with Acetaminophen with Codeine for pain management to be taken twice daily for five days. ECF No. 28-1 at 18. On January 14, 2014, the plaintiff's pain medication was renewed for an additional ten days. Id. at 20.

On January 23, 2014, the Plaintiff underwent surgery at Monongalia General Hospital to repair the right lateral tibial plateau fracture through open reduction with internal fixation ("ORIF"). ECF No. 28-1 at 22. The surgeon noted that the surgery went well with excellent alignment of the fracture. Id. The plaintiff was sent to the recovery room in good condition. Id.

The plaintiff received postoperative care at Monongalia General Hospital from January 24, 2014, through January 27, 2014, on which date he was returned to FCC Hazelton.  ECF No. 28-1 at 26-36. On January 25, 2014, consulting provider, Dr. Gregg O'Malley, MD, noted that the plaintiff showed no  signed of complications from the knee surgery. Id. at 26. The same day  that he returned FCC Hazelton, January 27, 2014, an

order was placed for a follow-up x-ray examination. Id. at 36.  In addition, it was noted that the plaintiff's staples would be removed in 11 days, and the plaintiff would be placed in a handicapped accessible cell in the SHU. Id. On February 3, 2014, the Plaintiff's pain medication was renewed for 10 days. Id. at 38.

On February 20, 2017, the plaintiff was transferred from FCC Hazelton to USP McCreary. ECF No. 27-2 at 8. The plaintiff was seen at USP McCreary's Health Services on March 3, 2014[3], at which time a post-surgical x-ray was ordered. ECF No. 28-1 at 48. He was seen again in the McCreary Health Services on March 25, 2014.

In August of 2014, an orthopedist recommended that he have arthroscopic surgery of the right knee. ECF No. 28-1 at 67. He eventually underwent surgery to repair the meniscus in his right knee.[4] By December 2, 2014, the Plaintiff was moving around well. In fact, he declared he had "no pain" and asked the health provider at McCreary if he could begin working out. Upon examination, the provider noted the plaintiff's right knee had some crepitus, but no laxity. Two stitches were removed, and the wound was healing nicely. There were no signs of infection and his knee movements were otherwise normal. ECF No. 28-1 at 81.

### III. The Complaint

---

[3]Although not included in the recitation of facts supplied by either the plaintiff or defendant, the medical records establish that the plaintiff was first seen at USP McCreary's Health Services on February 21, 2014. He indicated that his "right knee still hurts all the time." ECF No. 28-1 at 41. However, physical observation revealed no draining skin lesions, open sores, wounds or body deformities. Id. at 42.

[4]Although neither party provides a specific date, it would appear that the surgery was performed on or about October 24, 2014. ECF No. 28-1 at 70.

5

In his complaint, the plaintiff alleges that he was denied his right to emergency medical treatment as required by page 21 of Hazelton's Inmate Handbook which provides that emergency health services are available 24 hours daily. The plaintiff appears to allege that the negligence of staff at Hazelton led to his having to have two knee surgeries, and he is still suffering from this injury. He further alleges that Warden O'Brien and his medical official were negligent due to "being transferred while the second surgery was ordered and needed." ECF No. 1 at 9. For relief, the plaintiff requests either that a settlement be arranged or alternatively that a trial be set on the claims presented.

### IV. **Defendant's Motion to Dismiss or in the Alternative for Summary Judgment**

In support of their Motion, the defendants allege that the plaintiff has failed to file a certificate of merit with his complaint as required by West Virginia law. In addition, the defendant argues that the plaintiff has failed to establish that a duty was breached or that any current injury to his knee was proximately caused by any act or omission by the defendant.

### V. **Plaintiff's Motion for Summary Judgment**

The Plaintiff maintains that he has established the four things that need to be proven in a negligence claim. First, he maintains that the United States of America had a duty to provide him with 24 hour emergency care. Second, the United of America breached its duty by: (1) not having an adequate health care official to evaluate such a serious injury; (2) having him housed on the top bunk when there were specific

instructions from prison doctors to house him on a bottom bunk; and (3) transferring him to another facility after there were doctor's orders in place to have a second surgery. Third, the causation was prison officials neglecting to follow doctor's orders in housing him on the bottom bunk. Finally, the damages suffered are the damaged right meniscus and additional pain and/or damage to his right knee. ECF No. 43 at 14.

## VI. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary

9

judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## VII.  Analysis

### A. Federal Tort Claim Act

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code.  28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

The Supreme Court has held that "a person can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). However, the FTCA does not create a new cause of action. Medina v. United States. 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the

same respect as a private person would be liable under the law of the place where the act occurred." Id.

To establish a medical negligence claim in West Virginia, the plaintiff must prove that: (a) the health care provider failed to exercise the degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death. W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated, and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-06 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §§ 55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate

of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[5]

Here, the plaintiff alleges that FCC Hazelton medical staff were negligent in their care of him because they failed to provide him with 24 hour emergency care, transferred him despite doctor's orders for additional surgery, failed to remove the staples within 12 days[6], leading to the possibility of infection, and the sum of this negligence required a second surgery from which he is still recovering. However, the plaintiff has failed to provide a certificate of merit as required by W.Va. Code § 55-7B-6.

---

[5]In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury. The Court found that there was no conflict between the state pre-filing requirements and the pre-filing requirements of the FTCA. More specifically the Court concluded that the West Virginia pre-filing requirement is 'substantive' [and] there is no conflict to be resolved between the federal and state pre-filing requirements. Although § 55-7B-6 is more demanding [than] 28 U.S.C. § 2675(a) and its implementing regulations, there is nothing to prevent a plaintiff from complying with both requirements." Stanley, 321 F.Supp.2d at 808-09.

[6]Although not raised in his original complaint, the plaintiff included this allegation in his Motion for Summary Judgment. ECF No. 43 at 9, 11.

The undersigned recognizes that a plaintiff is excused from filing the screening certificate if his claims fall within the exception contained in W.Va. Code § 55-7B-6(c) which provides as follows:

> Notwithstanding any provision of this Code, if a claimant or his or her Counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

Although the plaintiff does not argue that the statements contained in his SF-95 are sufficient to meet the requirements of § 55-7B-6(c), it is apparent that the medical issues and alleged breaches contained in this complaint "relate to complex matters of diagnosis and treatment that are not within the understanding of lay jurors by resort to common knowledge and experience." O'Neill v. United States of America, 2008 WL 906470 (S.D.W. Va. March 31, 2008), citing Farley v. Shook, 218 W.Va. 68, 629 S.E.2nd 739, 745 (W.Va. 2006). In the instant case, any finding that the plaintiff received medical treatment that fell below the applicable standard of care and caused him injuries must be supported by expert testimony because the diagnosis and treatment of a lateral tibial fracture is not within the understanding of lay jurors by resort to common knowledge and experience. Farley at 745. Accordingly, because the plaintiff did not submit a screening certificate of merit, his FTCA must be dismissed.

Furthermore, the undersigned acknowledges that the Plaintiff has alleged negligence on the part of prison officials in housing him in an upper bunk and

transferring him to another facility when an order was in place for further surgery. However, in order to maintain a case against the United States under the FTCA, the plaintiff must demonstrate that his action is permissible under the FTCA and satisfied the necessary elements of a tort claim under state law. It is a jurisdictional requirement that the plaintiff in such a case file and exhaust an administrative tort claim prior to filing suit. See 28 U.S.C. § 2675; see also Muth v. United States, 1 Fl23d 246, 249 (4th Cir. 1993); Dupont v. United States, 980 F.Supp. 192, 195 (S.D. W. Va. 1997); Johnson v. United States, 906 F. Supp. 1100 (S.D. W. Va. 1995). Here, the plaintiff prepared an administrative tort claim on April 21, 2014., utilizing a SF-95 Form prescribed by the Department of Justice. In the section which requires the claimant to state in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof, the plaintiff wrote the following:

> I have been DENIED ADEQUATE MEDICAL TREATMENT/ EMERGENCY MEDICAL TREATMENT regarding a VERY SERIOUS (R) Knee injury (MEDICAL MALPRACTICE).
> On 1-1-14 2014 I SEVERELY INJURED My right Knee, Night shift R/N (Fowler) contacted PA- C. Meyer (because R/N Fowler was unqualified to evaluate such an injury; although Incarcerated Citizens have the Right to 24 Hour EMERGENCY MEDICAL TREATMENT; at this time of notification PA-C. Meyer (WITHOUT VISUALLY VIEWING THE INJURY) Notified that this Claimant should WAIT UNTIL THURSDAY TO BE EVALUATED FOR A BROKEN BONE. (which later revealed should have been treated as EMERGENCY, by HAZ, Dr. Mimms).

ECF No. 1-2. (emphasis in original). Among other things, the purpose of the administrative claim is to afford the government an opportunity to investigate and expedite the fair administrative settlement of tort claims. See Executive Jet Aviation Inc v. U.S., 507 F.2d 508 (6th Cir. 1974). Clearly, the plaintiff made no mention that his injury was the result of his being assigned to a top bunk in violation of a lower bunk pass, and therefore, the Bureau of Prisons was not given the opportunity to investigate this claim now raised in his pending FTCA. Therefore, this Court is without jurisdiction to address that claim. Likewise, the same applies to the plaintiff's claim that he was transferred to another facility despite an order for further surgery.[7]

## VI. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 27] be **GRANTED**; the plaintiff's Motion Under Rule 56(a) for Summary Judgment [ECF No. 43] be **DENIED** and this case be **DISMISSED** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file

---

[7]The undersigned notes that the medical records do not support this claim in any event. In fact, there is no mention in the medical records for the need for arthroscopic surgery on the plaintiff's right knee until several months after he arrived at McCreary from Hazelton.

objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further **DIRECTED** to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court. Furthermore, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: November 8, 2017

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE